IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 19-00020 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR RECONSIDERATION OF |
| | ) | THIS COURT'S ORDER DENYING |
| | ) | HIS REQUEST FOR COMPASSIONATE |
| vs. | ) | RELEASE |
| | ) | |
| AKEA KAMAI NINO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS
COURT'S ORDER DENYING HIS REQUEST FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2019, Defendant Akea Kamai Nino was convicted of a
drug crime and of being a felon in possession of ammunition.  He
was sentenced 92 months of imprisonment, which he is serving at
FCI Sheridan.  Nino has a scheduled release date of August 14,
2025.  Nino had earlier sought compassionate release under 18
U.S.C. § 3582(c)(1)(A), relying primarily on the COVID-19
pandemic and arguing that his health conditions increased his
risk of a severe case of COVID-19.  On February 1, 2021, this
court denied that compassionate release request, ruling that Nino
failed to demonstrate an extraordinary and compelling reason
warranting a sentence reduction.  *See* ECF No. 79.

On October 13, 2021, Nino moved for reconsideration of
this court's order denying his request for compassionate release.
*See* ECF No. 80.  Nino argues that circumstances have changed such

that this court should reconsider its earlier denial of his motion for compassionate release.  In particular, Nino says that many inmates at his facility, including himself, have contracted the Delta variant of COVID-19.  In addition to the medical conditions noted in the first motion, Nino now has gall stones. *See* ECF No. 80, PageID #s 613-14, 622.  Nino notes that COVID-19 has caused harsh conditions at his facility, such as the limitation on inmates to only 25 minutes a day outside and the cancellation of rehabilitative programs and social activities. *See id.*, PageID #s 615, 617.  Nino says that, when he contracted COVID-19, he was placed in isolation and deprived of medication, showers, and blankets.  *See* ECF No. 87, PageID # 808.  He describes himself as having not yet fully recovered his senses of smell and taste, getting easily fatigued, and still suffering from shortness of breath and coughing fits.  *See id.*, PageID # 809.

Even adding the additional circumstances raised in the reconsideration motion to the circumstances raised in the original motion, Nino fails to demonstrate an extraordinary and compelling reason warranting a sentence reduction.  Accordingly, his reconsideration motion is denied.

II.     **BACKGROUND.**

On March 27, 2019, Nino entered pleas of guilty to a drug charge and to one count of being a felon in possession of

ammunition.  *See* ECF No. 22.  On July 24, 2019, Nino was
sentenced to concurrent terms of 92 months of imprisonment on
each count, concurrent terms of 5 years of supervised release
with respect to the drug crime and 3 years of supervised release
with respect to the ammunition charge, and $200 in special
assessments.  *See* ECF No. 32.  Nino is 32.  Now at FCI Sheridan,
Nino has a scheduled release date of August 14, 2025, taking
good-time credit into account.  https://www.bop.gov/inmateloc/
(input Register Number 98322-022) (last visited January 3, 2022);
Decl. of Andrew Cooper, Associate Warden at FCI Sheridan, ECF No.
85-1, PageID # 634.

　　　　FCI Sheridan, a medium-security federal correctional
institution located in Sheridan, Oregon, currently houses 1,564
inmates.  *See* ECF https://www.bop.gov/locations/institutions/she/
(last visited January 3, 2022).  As of the morning of January 3,
2022, FCI Sheridan has 1 active inmate case of COVID-19 and 3
active staff cases of COVID-19, with 225 inmates and 18 staff
members at FCI Sheridan having recovered from COVID-19.  *See*
https://www.bop.gov/coronavirus/index.jsp (last visited January
3, 2022).  However, as represented by Nino in his reconsideration
motion, FCI Sheridan experienced a significant COVID-19 outbreak
in the Fall of 2021.  Between September 1, 2021, and November 5,
2021, 126 inmates and 21 staff members tested positive for COVID-
19.  *See* Cooper Decl., ECF No. 85-1, PageID # 635.  For that same

period, FCI Sheridan conducted 2,444 COVID-19 tests of inmates. *Id.*, PageID # 636.

As of November 5, 2021, 1,008 inmates (approximately 2/3s of the inmates) and 219 staff at FCI Sheridan were fully vaccinated against COVID-19. *Id.*, PageID # 636. Since then, many inmates a few more staff members have become fully vaccinated. *See* https://www.bop.gov/coronavirus/index.jsp (indicating that, as of the morning of January 3, 2022, 1446 inmates (92.45% of the inmates) and 245 staff are fully vaccinated) (last visited January 3, 2022).

The medical information submitted to the court under seal corroborates Nino's contention in his publicly filed motions that he is an obese smoker who has asthma and gall stones, and who may have hypertension. *See* ECF No. 72, PageID #s 440 (noting height, weight, and elevated blood pressure), 441 (stating that Nino is asthmatic), 462 (detailing cigarette use), 502 (noting a prescription for a rescue inhaler), 528 (noting normal systolic blood pressure and slightly elevated diastolic blood pressure); 531 (noting elevated blood pressure and history of asthma); ECF No. 80, PageID # 622 (noting gall stones). Nino also says he contracted COVID-19 in September 2021. *See* ECF No. 80, PageID # 614.

III.          **ANALYSIS.**

Nino's compassionate release request is governed by 18

U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons
> warrant such a reduction . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

In other words, for the court to exercise its authority under

§ 3582(c)(1)(A), it must (1) find that the defendant exhausted

his administrative remedies or that 30 days have passed since he

filed an administrative compassionate relief request; (2) also

find, after considering the factors set forth in section 3553(a),

that extraordinary and compelling reasons warrant a sentence

reduction; and (3) find that such a reduction is consistent with

the Sentencing Commission's policy statements (assuming there are

any policy statements applicable to this motion). *See United

States v. Balgas*, 2021 WL 2582573, at *1 (D. Haw. June 23, 2021)

*United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

> **A.    Nino Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).**

This court has previously ruled with respect to Nino's original motion that he satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 79, PageID # 602. Given that Nino seeks reconsideration of that earlier motion and is arguing that there are now new circumstances that this court should consider, this court continues to find that Nino has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

> **B.    This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this judge has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This judge has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, she is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the

6

discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Balgas*, 2021 WL 2582573, at *2;; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy

7

statements that are binding on this court, they may inform this court's discretion.  *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

> **C.  Nino Has Not Demonstrated That Early Release Is Appropriate.**

Nino contends that extraordinary and compelling circumstances justify his early release.  He cites medical conditions as increasing his risk of suffering a severe case of the COVID-19 virus, which is present at FCI Sheridan.

According to the CDC, a person's risk of a severe illness from COVID-19 increases with age.  The CDC website explains that "Older adults are more likely to get very sick from COVID-19.  Getting very sick means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe, or they might even die.  **The risk increases for people** in their 50s and increases in 60s, 70s, and 80s.  People 85 and older are the most likely to get very sick."

https://www.cdc.gov/aging/covid19/covid19-older-adults.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Folder-adults.html#increased-risk (last visited January 3, 2022).  Nino is 32.

Nino's status as an obese smoker, without regard to the severity of his asthma, potential hypertension, and gall stones,

8

places him at increased risk of a severe case of COVID-19.  *See*
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
people-with-medical-conditions.html (last visited January 3,
2022).  Nino contracted COVID-19 in September 2021 and, although
he suffers from its lingering effects, he did not require
hospitalization or a ventilator.  *See* ECF No. 87, PageID # 809.
That is, COVID-19 placed extreme stress on Nino and left long-
lasting effects, but the record does not indicate that Nino's
life was threatened.

Nor does the record reflect whether Nino has been
vaccinated against COVID-19.  If Nino has not yet been
vaccinated, he may want to ask the BOP to vaccinate him.  In a
recent study, the "CDC found that those who were unvaccinated and
had a recent infection were 5 times more likely to have COVID-19
than those who were recently fully vaccinated and did not have a
prior infection."
https://www.cdc.gov/media/releases/2021/s1029-Vaccination-Offers-
Higher-Protection.html (discussing October 2021 study) (last
visited January 3, 2022).  The CDC stated that "vaccination can
provide a higher, more robust, and more consistent level of
immunity to protect people from hospitalization for COVID-19 than
infection alone for at least 6 months."  *Id.*

If Nino is choosing not to avail himself of measures to
further reduce the risk of COVID-19, and has no medical or

religious reason for refusing, that choice makes a finding of "extraordinary and compelling" circumstances justifying compassionate release difficult.  The Sixth and Seventh Circuit, for example, have held that prisoners who refuse the vaccine cannot be said to have "extraordinary and compelling" circumstances justifying compassionate release.  *See United States v. Lemons*, 2021 WL 4699249, at *3 (6th Cir. Oct. 8, 2021) ("a defendant's incarceration during the COVID-19 pandemic–when the defendant has access to the COVID-19 vaccine–does not present an 'extraordinary and compelling reason' warranting a sentence reduction"); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release").

District courts in the Ninth Circuit have similarly ruled that an inmate's refusal of a COVID-19 vaccination undercuts that inmate's assertion of extraordinary and compelling circumstances justifying compassionate release.  *See United States v. Rollness*, 2021 WL 4476920, at *5 (W.D. Wash. Sept. 30, 2021) (stating that a defendant's refusal to receive a COVID-19 vaccine cuts against compassionate release on the basis of vulnerability to COVID-19 when the defendant fails to demonstrate a vaccine-related allergy to the vaccine); *United States v.*

*Lundy*, 2021 WL 3174898, at *5 (W.D. Wash. July 27, 2021)
("Defendant's failure to offer any explanation for his decision
to decline the vaccine weighs against compassionate release on
the basis of vulnerability to COVID-19."); *United States v.
Oliver*, 2021 WL 2645916, at *4 (S.D. Cal. June 28, 2021)
("Oliver's refusal to be vaccinated weighs heavily against his
claim that there is an extraordinary and compelling reason to
justify release."); *United States v. Newman*, 2021 WL 2593763, at
*4 (D. Or. June 24, 2021) ("Judges in this District as well as
other district courts in the Ninth Circuit . . . have declined to
grant requests for compassionate release to individuals who have
refused COVID-19 vaccines."); *United States v. Baeza-Vargas*, 2021
WL 1250349, at *3 (D. Ariz. Apr. 5, 2021)("Judges of this Court,
as well as others around the country, have ruled with consistency
that an inmate's denial of a COVID-19 vaccination weighs against
a finding of extraordinary and compelling circumstances."); *see
also United States v. Hill*, 2021 WL 4443316, at *4 (D. Idaho
Sept. 28, 2021) (same); *United States v. Miller*, 2021 WL 3669314,
at *2 (D. Idaho Aug. 18, 2021) (same); *United States v.
Richmond*,2021 WL 2337626, at *6 (E.D. Cal. June 8, 2021) (same).
The court finds these cases persuasive and rules that Nino's
failure to explain whether he took advantage of the COVID-19
vaccine offered to all inmates by the BOP cuts against his claim

that he should be released because of the possibility that he might get a severe case of COVID-19.

This court stresses that Nino has no obligation to explain any decision to decline the vaccination.  Nino is certainly within his rights in remaining silent on that point. But on the present motion the burden is on Nino to justify compassionate release, and his lack of clarity with respect to whether he declined the vaccine weighs against a decision granting his motion.

The court next turns to an examination of factors set forth in § 3553(a), which is part of examining not only whether extraordinary and compelling reasons warrant a sentence reduction, but also of the court's analysis of the third compassionate release factor (whether early release is consistent with Sentencing Commission policy statements).  Several factors favor release: 1) Nino has no record of prison discipline, *see* ECF No. 68-13, PageID # 412; 2) Nino made attempts in prison to rehabilitate himself by taking educational programs, *see* ECF No. 68-12, PageID #s 407-08; and 3) Nino's crimes in the present case did not involve violence.

On the other hand, there are several factors suggesting that early release should be denied, including the relatively small fraction of his sentence that he has served.  At the time of Nino's sentencing, this court determined that a 92-month

12

sentence appropriately reflected the seriousness of his offenses, promoted respect for the law, and appropriately punished him for his crimes, which involved significant amounts of drugs and ammunition.  Nino received a below-guidelines sentence.  Nino had a total offense level of 29 and a criminal history category of IV, giving him a guideline range of 121 to 151 months on the drug charge.  He faced a statutory maximum of 120 months on the ammunition charge.  *See* ECF No. 31 (Minutes of sentencing proceeding in which the court adopted the Presentence Investigation Report); ECF No. 33 (Statement of Reasons stating that "[t]he court adopts the presentence investigation report without change").

As detailed in the Presentence Investigation Report ("PSR"), Nino had an extensive criminal record with multiple convictions and instances of violence and weapons.  For example, he was previously convicted of two drug-related crimes.  He was also convicted in 2007 of violating Hawaii's "Place to Keep" laws when ammunition, a shotgun, and a semi-automatic pistol were found in a vehicle in which he was a passenger.  In 2008, Nino received a warning after allegedly kicking his ex-girlfriend and pulling her ponytail with enough force to yank her head backward.  In 2010, Nino was convicted of a crime involving punching the window of his girlfriend's car, causing it to shatter and glass to hit her face, as well as later that same day punching her

multiple times in the head, choking her, and shoving her as she was trying to retrieve her belongings from what had been their shared residence. *See* ECF No. 29, PageID # 110.

Although not reflected in the PSR, the Government asserts that police officers documented a report of an alleged assault in which Nino was said to have hit an individual in December 2018 over a personal loan. *See* ECF No. 75, PageID # 574-75. The Government also describes a 2018 temporary restraining order issued against Nino that arose out of his alleged attack on an ex-girlfriend. *See id.*, PageID # 575.

Even if this court's consideration of violence is confined to what is in the PSR, this court is concerned about public safety given Nino's multiple convictions and history of violence, especially toward girlfriends. In addition, Nino has been classified as being at medium risk of recidivism. *See* ECF No. 68-12, PageID # 408. Of course, this court hopes that Nino will lead a law-abiding life once released, but his personal history is not encouraging.

This court is also troubled by Nino's release plan. Nino previously said that he planned to live with his girlfriend on Kauai, Hawaii, and that he has secured employment at a swimwear store there. *See* ECF No. 68-1, PageID # 271. The Government represents that, on June 23, 2020, it obtained and executed a search warrant for a package being mailed to the

14

swimwear store's address that contained 920 grams of methamphetamine. *See* ECF No. 75, PageID #s 579-80. This is concerning, especially because Nino's present drug conviction involved methamphetamine.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence. Having balanced the seriousness of Nino's crimes, the significant amount of time remaining on his sentence compared to the time he has served on that sentence, his conduct while incarcerated, his criminal history (including his history of violence), and the totality of the medical information he has submitted, this court determines that the reasons raised by Nino, while important, do not rise to the level of being extraordinary and compelling such that a reduction in his sentence is warranted.

For the same reasons, Nino has not satisfied § 3582(c)(1)(A)'s third requirement: he has not shown that release would be consistent with the Sentencing Commission's policy statements. Like the statute itself, the Sentencing Commission has indicated that a court may only reduce a term of imprisonment if extraordinary and compelling reasons support the reduction. *See* U.S.S.G. § 1B1.13. Nino has not made such a showing.

**III.**      **CONCLUSION.**

For the forgoing reasons, this court denies Nino's request for reconsideration of this court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

It is so ordered.

DATED: Honolulu, Hawaii, January 3, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Nino*, Cr. No. 19-00020 SOM; ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER DENYING HIS REQUEST FOR COMPASSIONATE RELEASE

16